IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | |
|---|---|
| TERESA DONNELL and HARVEY DONNELL, | ) ) ) |
| Plaintiffs, | ) ) |
| VS. | ) ) No. 1:05-1139-T-An |
| KOHLER COMPANY and GEORGE ROGERS, Individually, | ) ) ) ) |
| Defendants. | ) |

ORDER PARTIALLY DENYING AND PARTIALLY GRANTING DEFENDANTS'
MOTION TO DISMISS AND DECLINING TO EXERCISE SUPPLEMENTAL
JURISDICTION OVER PLAINTIFFS' COMMON LAW CLAIMS

Teresa Donnell ("Mrs. Donnell") and Harvey Donnell ("Mr. Donnell") (collectively "Plaintiffs") filed an amended complaint against Kohler Compay ("Kohler") and George Rogers ("Rogers") (collectively "Defendants"), asserting various theories of recovery including under Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. § 2000e, and the Tennessee Human Rights Act ("THRA"), TENN. CODE ANN. § 4-21-401, and Tennessee common law. Before Plaintiffs filed the proposed amended complaint, which was eventually permitted, Defendants had moved to dismiss the entire original complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. In this order, the court addresses whether the superseding complaint withstands Defendants' previously-filed

motion to dismiss. For the following reasons, Defendants' Motion to Dismiss is DENIED with respect to Mrs. Donnell's Title VII and THRA claims. The court declines to exercise supplemental jurisdiction over all of Mrs. Donnell's common law claims and Mr. Donnell's loss of consortium claims, and those claims are DISMISSED WITHOUT PREJUDICE. To the extent that the amended complaint attempts to allege that either Kohler or Rogers violated or attempted to violate Mrs. Donnell's or Mr. Donnell's federal or state constitutional rights, Defendants' Motion to Dismiss those allegations is GRANTED.

I

Kohler owns a manufacturing plant in Union City, Tennessee. Mrs. Donnell began working at the Kohler plant in April of 2002. Rogers was the Superintendent over Mrs. Donnell's shift. In the fall of 2002, Rogers allegedly began a "systematic and continuous pattern" of sexual harassment directed toward Mrs. Donnell. Am. Compl. ¶ 13. According to Mrs. Donnell, Rogers would stare at her, "leer[]" at her, follow her, stand "close to her at meetings," "crowd[] her at meetings," make sexually suggestive facial expressions at her and sexually suggestive comments to her, lick his lips, "rub[] himself," "put[] his face in her hair," and talk about her with other employees in a "sexual" way. *Id.* A fair inference from the amended complaint is that the alleged conduct continued to occur while Mrs. Donnell tried to remedy the situation internally until as late as sometime in mid-2004. *See id.* ¶ 18 (alleging that Mrs. Donnell made her last complaint to a human resources manager on May 17, 2004, before she finally resigned).

2

Mrs. Donnell describes her experience on Rogers' shift as "extraordinarily hyper-sexualized an[d] offensive." *Id.* ¶ 14. She also claims that she made prompt and numerous efforts to persuade Kohler, through several supervisors and the personnel manager, to take action to correct the situation. First, in early 2003, Mrs. Donnell went to her immediate supervisor under Rogers' shift, Jeff Haslet. *Id.* ¶ 15. When Kohler took no action after her report to Haslet, Mrs. Donnell complained to Frankie Fuller, who was another supervisor at Kohler. *Id.* ¶ 16. Her resort to Frankie Fuller also proved unsuccessful. After reporting Rogers' alleged behavior to yet another Kohler supervisor, Jerry Carroll, Mrs. Donnell then went to Jill Austin ("Austin"), the Human Resources Manager at Kohler. *Id.* ¶¶ 17, 18.

Mrs. Donnell claims that, after Austin promised that Kohler would do "something," *id.* ¶ 18, Kohler did nothing. When Mrs. Donnell submitted a written outline of the alleged harassment on May 17, 2004, Austin allegedly suggested that Mrs. Donnell had been lying the entire time. *Id.* Mrs. Donnell surmises that Kohler's indifference was attributable to the fact that Rogers was a "key witness in a pending lawsuit against Kohler and Kohler wanted his favorable testimony at trial." *Id.* ¶ 24. Regardless of Kohler's motive, Mrs. Donnell apparently harbored no doubts about Kohler's willingness to help her after her experience with Austin. *Id.* ¶ 19. Therefore, she claims she "had no choice except to quit her job at Kohler Company to escape the sexual harassment." *Id.*

On May 13, 2005, Mrs. Donnell and Mr. Donnell filed their original complaint. dkt. # 1. The gravamen of both the original complaint and the amended complaint is that, due

3

to sexual harassment by her superior and to indifference by the company, Mrs. Donnell experienced a hostile work environment resulting in her constructive discharge and other injuries. *See* Compl. ¶ 19; Am. Compl. ¶ 19. The original complaint, however, contained a host of other claims to which Kohler and Rogers objected in their collective motion to dismiss the entire complaint. For example, the complaint purported to state claims on behalf of *Mr.* Donnell under Title VII and its Tennessee counterpart, the THRA, even though there are no allegations that he was subjected to gender-based or any other form of discrimination or retaliation. The complaint also sought to recover under Title VII against *Rogers* even though Rogers is clearly not an "employer" within the meaning of that statute. *See Wathen v. GE*, 115 F.3d 400, 405 (6th Cir. 1997) (holding that only "employers" are subject to Title VII liability). The amended complaint removes the statutory claims against Rogers and removes Mr. Donnell's Title VII, THRA, and independent common-law claims. The court does not address those claims.

The amended complaint is still subject to many of the other arguments presented in Defendants' 12(b)(6) motion. In addition, the court declines supplemental jurisdiction over Plaintiffs' common law claims.

II.

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint should be dismissed for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). In ruling on a 12(b)(6) motion, however, a district court must assume the truth of

4

all of the well-pleaded material facts alleged in the complaint. *See Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 633 (1999). If the complaint gives a defendant " 'fair notice of what the plaintiff's claim is and the grounds upon which it rests,'" the motion should be denied. *City of Monroe Employees Ret. Sys. v. Bridgestone Corp.*, 399 F.3d 651, 664 (6th Cir. 2005) (quoting *Lawler v. Marshall*, 898 F.2d 1196, 1199 (6th Cir. 1990) (in turn quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957))). Moreover, the factual inferences that a defendant draws from the complaint, along with the defendant's resulting legal conclusions, do not alone warrant a Rule 12(b)(6) dismissal. *Id.* at 665 (citing *In Re Sofamor Danek Group, Inc.*, 123 F.3d 394, 400 (6th Cir. 1997) (in turn citing *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987))). In short, the motion to dismiss will be granted only if it appears that the plaintiff " 'undoubtedly can prove no set of facts in support of [her] claims that would entitle [her] to relief.'" *Id.* (citing *PR Diamonds, Inc. v. Chandler*, 364 F.3d 671, 680 (6th Cir. 2004).

III.

A. *Mrs. Donnell's Title VII and THRA Claims Against Kohler*

Defendants first contend that Mrs. Donnell's federal and state statutory allegations are legally insufficient. Apparently, Defendants take issue with Mrs. Donnell's descriptive use of the words "continuing pattern of sexual and malicious harassment" rather than "hostile work environment." Defs.' Mem. Supp. Mot. to Dismiss at 4. The court's analysis

5

of the sufficiency of Mrs. Donnell's pleading is the same under both Title VII and the THRA. *See Parker v. Warren County Util. Dist.* 2. S.W.3d 170, 176 (Tenn. 1999) (adopting the analysis of the United States Supreme Court in *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998) and *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998) for THRA supervisor sexual harassment cases). To state a claim against Kohler arising out of Rogers' alleged sexual harassment, it must appear from the amended complaint (1) that Mrs. Donnell is a member of a protected class; (2) that she was "subjected to unwelcome sexual harassment in the form of sexual advances, requests for sexual favors, or other verbal or physical conduct of a sexual nature;" (3) the sexual harassment was taken because of her sex; (4) either a tangible employment action was taken or the sexual harassment "unreasonably interfer[ed] with [her] work performance and creat[ed] an intimidating, hostile, or offensive work[] environment that affected seriously [her] psychological well-being . . . ;" and (5) "the existence of *respondeat superior liability*." *Yeary v. Goodwill Indus.–Knoxville*, 107 F.3d 443, 445 (6th Cir. 1997) (emphasis added) (quoting *Rabidue v. Osceola Ref. Co.*, 805 F.2d 611, 619–20 (6th Cir. 1986) and citing *Risinger v. Ohio Bureau of Workers' Comp.*, 883 F.2d 475, 484 (6th Cir. 1989)).

In *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57 (1986), the United States Supreme Court squarely held that sexual harassment resulting in a "hostile work environment" was a type of discrimination "because of sex" that was protected under Title VII even without an official, tangible employment action. *See Vinson*, 477 U.S. at 73. A

6

hostile work environment is one that is so severe or pervasive that it alters the "terms, conditions, or privileges" of employment and creates an abusive work environment under both an objective reasonable person standard and a subjective victim-specific standard. *Id.* at 67; *see also Schramm v. Slater*, No. 03-3333, 2004 U.S. App. LEXIS 14889, at **15 n.3 (6th Cir. July 14, 2004) (citing *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 463 (6th Cir. 2000) and *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21–22 (1993)).

In *Ellerth* and *Faragher, supra*, the Court addressed employer liability for sexual harassment by a supervisor of the victim. In both cases, the court held that an employer can be held vicariously liable for such harassment if either: (1) the harassment culminates in a tangible employment action or (2) no tangible employment action is taken, but the harassment is "severe and pervasive," and the employer cannot establish an affirmative defense that the plaintiff unreasonably failed to take advantage of any "preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Ellerth*, 524 U.S. at 765; *Faragher*, 524 U.S. at 807; *see also Clark v. UPS*, 400 F.3d 341, 348–49 (6th Cir. 2005). Where there is a tangible employment action, the employer is liable for supervisor sexual harassment. *E.g., Ellerth*, 524 U.S. at 765. A constructive discharge case, like this one, may or may not involve an "official act" constituting a "tangible employment action" preceding the victim's resignation. *See Pa. State Police v. Suders*, 124 S.Ct. 2342, 2355 (2004).

Defendants cite none of these cases in their motion to dismiss Mrs. Donnell's Title

7

VII and parallel THRA claim. Instead, Defendants merely assert that "[n]either Title VII nor the Tennessee Human Rights Act creates an individual causes of action for" what Mrs. Donnell describes as a "continuing pattern of sexual and malicious harassment." Defs.' Mem. Supp. Mot. to Dismiss at 4. This aspect of Defendants' challenge is semantic. The issue is not whether Mrs. Donnell used the correct terminology in describing the type of Title VII/THRA claim she was asserting. The issue is instead whether all of the allegations of the complaint, taken as true and viewed in Mrs. Donnell's favor, put Defendants on fair notice of the legal theory and factual basis upon which Mrs. Donnell seeks to hold Kohler liable. When the question is so framed, the court has no doubt that the allegations of the amended complaint state a valid *claim* that Kohler is vicariously liable for Rogers' sexual harassment under Title VII and the THRA.

Here, Mrs. Donnell alleges that Rogers, who was a higher-ranking employee in a supervisory capacity over her, engaged in a continuous pattern of sexual harassment directed toward her. For instance, Mrs. Donnell accuses Rogers of "staring at her, leering at her, following her around the plant, standing close to her at meetings, crowding her at meetings, making suggestive facial expressions, licking his lips, rubbing himself, putting his face in her hair, making suggestive comments to her, and . . . discussing [her] with other employees in a sexual manner." Am. Compl. ¶ 13. The harassment allegedly lasted at least one year and perhaps longer. Although the complaint does not mention the motive for Rogers' behavior, it appears at this stage that it was taken "because of" her gender.

8

The amended complaint is also sufficient to put Kohler on notice of the basis for respondeat superior liability. Mrs. Donnell allegedly spent the latter part of 2002 and most if not all of 2003 trying to convince someone at Kohler to take action to protect Mrs. Donnell. According to Mrs. Donnell, none of her efforts were successful, but they were instead met with indifference. Both the harassment and Kohler's indifference, moreover, allegedly "interfered with her work performance" by, *inter alia*, forcing her to resign from Kohler and in other psychological ways.

In brief, Mrs. Donnell's Title VII and THRA claims survive Defendants' motion to dismiss, which is based on the Plaintiffs' choice of vocabulary in describing those claims. The "facts" section of the complaint tells a story that, if true, might very well entitle Mrs. Donnell to relief under Title VII and the THRA. In addition, although Kohler's ultimate liability depends on the existence or non-existence of many factors, it is not difficult to discern from the complaint what those factors might be in light of Supreme Court and Sixth Circuit precedent governing hostile work environment cases. Therefore, the amended complaint satisfies Rule 12(b)(6) of the Federal Rules of Civil Procedure with respect to Mrs. Donnell's Title VII and THRA claims.

B. *Mrs. Donnell's Tort Claims for Negligent Supervision, Negligent Retention, and Failure to Take Remedial Action."*

Defendants next allege that Mrs. Donnell's state tort claims for negligent supervision, negligent retention, and "failure to take remedial action" should be dismissed for failure to

9

state a claim under Tennessee law. Defendants first submit that the elements of common law negligence are not pleaded in the original complaint. Defs. Mem. Supp. Mot. 5. In any event, the amended complaint cures any deficiencies in the original complaint with regard to Mrs. Donnell's negligence claims. Specifically, the amended complaint alleges that Kohler owed a duty to Mrs. Donnell to protect her from Rogers; that Kohler breached the duty in not supervising, firing, or otherwise taking remedial action against Rogers; and that, as a result of Kohler's omissions, Mrs. Donnell suffered psychologically and in other ways and was eventually driven to resign from her position at Kohler. Am. Comp. ¶ 22. Thus, to the extent that Defendants are claiming simply that Mrs. Donnell did not allege the necessary elements of a negligence claim, that argument is without merit.

Defendants also claim, however, that the THRA provides all the protection that Mrs. Donnell is entitled under Tennessee law for the injuries that were allegedly caused by Kohler's omissions. Defs.' Mem. Supp. Mot. at 6. In other words, under Defendants' view, there are no separate state tort claims for "negligence" against an employer whom the employee seeks to hold liable under the civil rights laws for not preventing or correcting a hostile work environment created by a supervisor's sexual harassment. Although Defendants are correct that there is a shortage of state case law specifically approving of these common law claims in similar factual circumstances, Defendants cite no state precedent that forecloses those claims either. As pointed out in Plaintiffs' supplemental opposition, Tennessee recognizes the torts of negligent supervision and retention in general.

10

Pls.' Supplemental Mem. Opp. Mot. to Dismiss at 1 (citing several Tennessee cases).

Furthermore, the Western Division of this court addressed a similar contention in *Hays v. Patton-Tully Transp. Co.*, 844 F. Supp. 1221, 1222–23 (W.D. Tenn. 1993), and the court concluded that Tennessee would recognize the general tort of negligent "supervision" in the specific context of supervisor sexual harassment cases so long as the victim stated a separate and viable common law tort claim against the supervisor. *Id.* at 1223. The court reasoned that the negligence claim against the employer could not be based on the supervisor's "sexual harassment" because sexual harassment was a creature of statute and was not an injury at common law. *Id.* On the other hand, when the supervisor is alleged to have committed a separate tort, such as battery, the court stated that it would not be "revolutionary" to hold the employer liable for the supervisor's tort on a negligent supervision theory. *Id.*

The court thus agrees with Plaintiffs that the general torts of negligent supervision and negligent retention[1] have been recognized in Tennessee and that the federal district court's decision in *Hays* supports permitting Mrs. Donnell's common law negligence claims against her employer, Kohler. The court, however, declines to exercise supplemental jurisdiction over Mrs. Donnell's common law negligence claims for a reason that was

---

[1] At this stage of the proceedings, the court does not find the distinction, if any, between "negligent supervision" and "negligent retention" particularly important. Also, the court does not view Mrs. Donnell's claim of "failure to take remedial action" as stating a theory of liability separate and independent from her "negligent supervision" and "negligent retention" claims. The complaint passes Defendants' pleading challenge because it states the elements of duty, breach, causation, and damages. *See Santiago v. Cooper*, No. W2003-01882-COA-R3-CV, 2004 Tenn. App. LEXIS 329, at *12 (Tenn. Ct. App. May 18, 2004) (analyzing negligent supervision under general negligence principles).

11

apparently overlooked in *Hays* and by Defendants here. As the court in *Hays* acknowledged, "[t]here are apparently no *Tennessee* cases . . . treating the specific issue whether a negligent supervision claim is cognizable when brought by an employee" for a tort committed by a co-employee. *Id.* (emphasis added). The *Hays* court nevertheless concluded that it would not be "revolutionary" to permit such a claim. *Id.* This court respectfully disagrees. The reason for the lack of guidance from the state courts on the specific issue seems clear, for it has long been the law in Tennessee that:

> The rights and remedies granted to an employee subject to the Workers' Compensation Law . . . shall exclude all other rights and remedies of such employee, such employee's personal representative, dependents or next of kin, at common law or otherwise.

TENN. CODE ANN. § 50-6-108(a); *see also Bronski v. Northwest Airlines, Inc.*, No. 01-2394, 2003 U.S. Dist. LEXIS 12032, at **22–24 (W.D. Tenn. Feb. 28, 2003). Lawyers in Tennessee are undoubtedly aware of this provision, and that would seem to explain why there is not an established body of state case law recognizing or even discussing "negligent supervision" claims by an employee against his employer for a co-employee's common law tort. Kohler is an employer subject to the provisions of the Tennessee Workers' Compensation Law, TENN. CODE ANN., § 50-6-101, *et. seq. See Tolbert v. Kohler Co.*, No. W2002-02604-WC-R3-CV, 2003 Tenn. App. LEXIS, at *1 (Tenn. Workers' Comp. Panel Sept. 3, 2003) (unpublished memorandum opinion), *aff'd*, 2003 Tenn. LEXIS 753, at *1 (Tenn. Sept. 3, 2003) (unpublished order). Recognizing a common law negligence claim against Kohler by one of its employees for the acts of a co-employee would be

"revolutionary" in the sense that it would at least implicitly approve of a new exception to the exclusivity provision of section 50-6-108(a) of Tennessee's workers' compensation statute without explicit guidance from the courts of Tennessee.

In *Harmon v. Moore's Quality Snack Foods, Inc.*, the Court of Appeals of Tennessee held that the exclusivity provisions of Tennessee's workers' compensation statute were not applicable in a THRA case alleging liability against an employer for supervisor sexual harassment. 815 S.W.2d 519, 520 (Tenn. Ct. App. 1991). The court based its decision on the different types of injuries that are addressed by the workers' compensation statutes as opposed to state and federal discrimination laws. *Id.* at 523. Subsequently, in *Anderson v. Save-A-Lot, Ltd.*, the Supreme Court of Tennessee explicitly stated that "the THRA is the appropriate avenue of relief for plaintiffs who suffer injuries as a result of sexual harassment." 989 S.W.2d 277, 290 (Tenn. 1999) (citation omitted).

Both cases recognize that, with the passage of THRA, the General Assembly of the State of Tennessee provided an explicit, statutory remedy for victims of sexual harassment in the workplace. *Id.* at 289. The enactment of THRA legislatively addressed the lack of a common law remedy for such an injury and also precluded employer-reliance on the exclusivity provisions of the workers' compensation statute in cases involving the types of injuries addressed by THRA. *See id.* at 289–90; *Harmon*, 815 S.W.2d at 527. Neither case, however, specifically recognized a *common law* negligence claim against an employer apart from the statutory claim under the THRA. In fact, neither case even addressed that issue.

13

28 U.S.C. § 1367(c) permits a federal district court to decline to exercise supplemental jurisdiction if a claim "raises a novel . . . issue of state law," or "in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c)(1) & (4). In exercising its discretion, the court should consider "judicial economy, convenience, fairness, and comity" as well as the "nature of the state law claims" and the "character of the governing state law." *See City of Chicago v. Int'l College of Surgeons*, 522 U.S. 156, 173 (1997) (internal quotation marks and citation omitted). In this case, the court finds that Tennessee law is undefined on the issue of whether an employee may bring a common law negligence action against his employer for the types of workplace injuries that are explicitly protected against by THRA. The Tennessee courts have suggested that THRA provides a perfect remedy for victims of sexual harassment and that the statute also avoids conflict with the state workers' compensation laws. Mrs. Donnell has asserted a valid THRA claim here. Her common law negligence claims are factually parallel to both her state and federal discrimination claims, but the statutory claims avoid even a potential conflict with Tennessee's workers' compensation laws and raise no other novel state law issues. Under these circumstances, the court concludes that its discretion would be more appropriately exercised by declining jurisdiction over Mrs. Donnell's common law negligence claims. As succinctly stated by the Eastern District of Michigan:

> Litigation in the federal courts involving both federal law claims and supplemental state law claims has caused procedural and substantive problems. Even if the federal and state claims in this action arise out of the same factual situation, litigating these claims together may not serve judicial economy or trial convenience.

14

> Federal and state law each have a different focus, and the two bodies of law have evolved at different times and in different legislative and judicial systems. Because of this, in almost every case with supplemental state claims, the courts and counsel are unduly preoccupied with substantive and procedural problems in reconciling the two bodies of law and providing a fair and meaningful proceeding.
>
> The attempt to reconcile these two distinct bodies of law often dominates and prolongs pre-trial practice, complicates the trial, lengthens the jury instructions, confuses the jury, results in inconsistent verdicts, and causes post-trial problems with respect to judgment interest and attorney fees. Consequently, in many cases the apparent judicial economy and convenience of the parties' interest in the entertainment of supplemental state claims may be offset by the problems they create.

*Beard v. Netco Title, Inc.*, 05-40252, 2005 U.S. Dist. LEXIS 21277, at *5 (E.D. Mich. Aug. 26, 2005) (order).

For these reasons, the court declines to exercise supplemental jurisdiction over Mrs. Donnell's common law negligence claims against Kohler. Mrs. Donnell has an explicit statutory remedy, under both state and federal law, against Kohler for allegedly failing to prevent Rogers' alleged sexual harassment. To the extent that Mrs. Donnell seeks to recover separately for Kohler's alleged negligent failure to prevent Rogers' alleged "intentional infliction of emotional distress" and "battery," the Tennessee courts, not a federal district court, have the prerogative to speak first on whether those common law negligence claims may be asserted against an employer that is otherwise subject to the workers' compensation law.

Mrs. Donnell also seeks to recover under Tennessee common law for "intentional infliction of emotional distress" against both Kohler and Rogers. She seeks to recover for common law battery against Rogers only. Finally, Mr. Donnell claims that he is entitled to damages from both Kohler and Rogers under Tennessee law for his alleged loss of consortium.

Even if the court assumes that any or all of these claims would survive Defendants' motion, the court still declines to exercise supplemental jurisdiction over those common law claims in this employment discrimination case. In light of the court's decision not to entertain Mrs. Donnell's common law negligence claims, and for the reasons stated in *Beard*, the court finds that it would be more judicially efficient for all of Plaintiffs' remaining and related common law claims to be litigated in state court. The court expresses no view on the legal merits of those claims or on the wisdom of presenting those claims to the state courts, but dismisses them without prejudice.

IV.

In Plaintiffs' opposition memorandum, Plaintiffs refer to paragraph 21 of their amended complaint as alleging "intimidation to prevent the exercise of constitutional rights." Pls.' Mem. Opp. Mot. to Dismiss at 2. Paragraph 21 of the amended complaint, in turn, alleges that both Kohler and Rogers prevented both Mr. and Mrs. Donnell from exercising their "right to free speech and freedom of association" under both the federal and state constitutions. Am. Compl. ¶ 21. These claims do not put either Defendants or the court on

16

notice of the factual basis and legal theory upon which Plaintiffs' base the purported constitutional claims.

The First Amendment to the United States Constitution, which is also applicable to state actors, provides that:

> [The government] shall make no law . . . abridging the freedom of speech . . . or of the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

U.S. CONST. amend. I; *see also* U.S. CONST. amend. XIV. Similarly, the Tennessee Constitution provides that:

> The free communication of thoughts and opinions, is one of the invaluable rights of man and every citizen may freely speak, write, and print on any subject, being responsible for the abuse of that liberty.

TENN. CONST. art. I, § 19. Here, the amended complaint is based on an alleged pattern of sexual harassment committed by a supervisor in a private manufacturing plant, and on the private plant's alleged hostility or indifference to the victim's complaints. Plaintiffs have not even attempted to explain how either the federal or the state constitution's free speech provisions are implicated by those alleged facts. *See also* 42 U.S.C. § 1983 (requiring that a defendant act "under color of" state law).

Although Plaintiffs never specifically cite this statute, Tennessee's "malicious harassment" statute, TENN. CODE ANN. § 4-21-701, provides a civil cause of action when a person:

> maliciously . . . [and] unlawfully intimidate[s] another from the free exercise or enjoyment of a constitutional right by injuring or threatening to

17

>     injure or coercing another person or by damaging, destroying or defacing any
>     real or personal property of another person.

*Carr v. Robertson County*, 29 S.W.3d 466, 473 (Tenn. 2000). A valid malicious harassment claim, however, requires that the civil rights intimidation be motivated by animus toward the victim because of the victim's "race, color, ancestry, religion or national origin." *Levy v. Franks*, 159 S.W.3d 66, 81 (Tenn. Ct. App. 2004) (internal quotation marks and citation omitted), *appeal denied*, M2002-02730-SC-R11-CV, 2004 Tenn. LEXIS 1075, at *1 (Dec. 6, 2004). The amended complaint makes no accusation that either Kohler or Rogers was motivated by any of these factors.

In short, the amended complaint does not state a valid claim that any of Plaintiffs' federal or state constitutional rights were violated by her supervisor or by her private employer. Thus, paragraph 21 of the amended complaint is dismissed.

## IV.

In summary, the Amended Complaint states a valid claim that Kohler violated Mrs. Donnell's rights under the provisions of Title VII and the THRA. Thus, Defendants' motion to dismiss Mrs. Donnell's Title VII and THRA claims is DENIED. Pursuant to 28 U.S.C. § 1367(c)(1) & (4), however, the court respectfully declines to entertain Mrs. Donnell's claim that Kohler is liable for "negligent supervision, negligent retention, and failure to take remedial action" under Tennessee common law—those claims are DISMISSED WITHOUT PREJUDICE. In light of that ruling, and also pursuant to § 1367(c), all of Plaintiffs' remaining and related state common law claims against either Kohler or Rogers are

18

DISMISSED WITHOUT PREJUDICE, including Mr. Donnell's claim for loss of consortium. Defendants' motion to dismiss Plaintiffs' First Amendment or "malicious harassment" allegations is GRANTED. The claims that shall remain are Mrs. Donnell's federal and state statutory claims against Kohler for alleged unlawful discrimination in employment.

IT IS SO ORDERED.

*James D. Todd*
JAMES D. TODD
UNITED STATES DISTRICT JUDGE

*10 November 2005*
DATE

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 23 in case 1:05-CV-01139 was distributed by fax, mail, or direct printing on November 14, 2005 to the parties listed.

---

C. Mark Donahoe
HARDEE MARTIN DAUSTER & DONAHOE
P.O. Box 98
Jackson, TN 38302

David Hardee
HARDEE MARTIN DAUSTER & DONAHOE
P.O. Box 98
Jackson, TN 38302

Robert Joseph Leibovich
YOUNG & PERL
One Commerce Square
Ste. 2380
Memphis, TN 38103

W. Stephen Gardner
YOUNG & PERL, P.C.
One Commerce Square
Ste. 2380
Memphis, TN 38103

Honorable James Todd
US DISTRICT COURT